UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMPETITIVE ENTERPRISE INSTITUTE )
)
                 *Plaintiff*, )
)
)
v. )                                    Civil Action No. 17-1600 (RC)
)
)
UNITED STATES DEPARTMENT OF THE )
TREASURY )
)
                 *Defendant*. )
_____)

### DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant the U.S. Department of the Treasury (the "Department" or "Defendant"), by and through the undersigned counsel, has moved for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56 on the grounds that there is no genuine issue as to any material fact and that the Department is entitled to judgment as a matter of law in this Freedom of Information Act ("FOIA") case in which a single letter is in dispute.

Plaintiff, the Competitive Enterprise Institute ("Plaintiff" or "CEI"), has opposed on two grounds, arguing first, that the Department's declaration should not be afforded the substantial weight that agency declarations are generally entitled based on CEI's allegations of "sloppy or suspicious handling" by the Department of the letter at issue.   Second, CEI contends that the letter at issue was not "properly classified" pursuant to Executive Order ("E.O.") 13,526. Both of Plaintiff's arguments are incorrect.

As stated in its Opening Brief, the Department has satisfied its requirements under FOIA. Plaintiff has received the response to which it is entitled and Plaintiff has not demonstrated

evidence of sloppiness or bad faith sufficient to overcome the presumption of deference to which Defendant's Declaration of Michael Mason ("Mason Declaration") in support of its classification decision is entitled.  No genuine issue of material fact exists, and the Department is entitled to summary judgment as a matter of law.

## I. THE DEPARTMENT'S WITHHOLDING OF THE LETTER IS LOGICAL AND PLAUSIBLE.

As a general matter, courts are "reluctant to intrude upon the authority of the executive in military and national security affairs[.]" *Dep't of the Navy v. Egan*, 484 U.S. 518, 530 (1988); *see also EPA v. Mink*, 410 U.S. 73 (1973) (courts must afford deference to the agency's decision to protect national security information from disclosure).  An agency's Exemption 1 claims are entitled to appropriate deference given the Executive Branch's special expertise in matters of national security.  *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (noting deference to expertise of agencies engaged in national security and foreign policy). Courts must "accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal citations omitted) (emphasis in the original); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 (courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of a particular classified record.")  (quoting *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).   While "any affidavit or other agency statement of threatened harm to national

security will always be speculative to some extent," the role of the court "is to ensure that those predictions are logical or plausible." *Judicial Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 943 (D.C. Cir. 2013) (internal citations and quotation marks omitted); *see also Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (holding that if an agency affidavit contains "reasonable specificity" and "information logically falls within claimed exemption," then "court should not conduct a more detailed inquiry to test the agency's judgment").

In this instance, the Mason Declaration describes the content and handling of the one document at issue with "reasonable specificity" to include (i) identifying it as coming from a "senior official of the Bank of England" and (ii) stating the Bank of England Letter "included sensitive information regarding international regulatory standards and the application of those standards, identified certain regulatory topics at issue between the United Kingdom and the United States, laid out policy positions, and outlined possible next steps for the two countries to take." Mason Decl. ¶ 4. The Mason Declaration also states that after the letter was received by the Department, a senior official of the Bank of England notified the Department that the letter was sent in confidence by the Governor of the Bank of England to the U.S. Secretary of the Treasury, with the expectation that it would be treated confidentially and not be distributed further other than to those U.S. officials advising the Secretary on the matters raised in the letter. *Id.*

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch*, 715 F.3d at 943. The Mason Declaration shows that the specific description of the Bank of England Letter is clearly linked in a logical and plausible fashion to the three bases for classification of that document, namely that it constitutes (a) foreign government information; (b) foreign relations or foreign activities of the United States, including confidential sources; and (c) scientific, technological, or economic matters relating to

the national security.   Mason Decl. ¶ 8.   As discussed below, the Mason Declaration amply demonstrates that the Bank of England Letter contains materials that are properly classifiable under E.O. 13,526, Sections 1.4(b), (d), and (e).

## II.   THE MASON DECLARATION ESTABLISHES THAT THE LETTER IS "FOREIGN GOVERNMENT INFORMATION."

Contrary to Plaintiff's contention that the Bank of England Letter does not constitute "foreign government information," the Mason Declaration describes the Bank of England Letter as being a letter to the Department from "a senior official of the Bank of England, a wholly owned entity of the government of the United Kingdom[,]" which was provided with "the expectation that it would be treated confidentially" and not distributed further.   Mason Decl. ¶ 4.   This is precisely the type of document envisioned by the protections of the Executive Order.   Indeed, under Section 6.1(s)(1) of E.O. 13,526, "foreign government information" is defined as "information provided to the United States Government, by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence."   E.O. 13,526, § 6.1(s)(1).   In response, Plaintiff arbitrarily claims that the definition of "foreign government information" in Section 6.1(s)(1) cannot apply to the Bank of England Letter on the basis that "Treasury has not alleged the existence of any *joint agreement* under subsection (1) . . . for this reason, the only relevant definition is 6.1(s)(2)."   Pl.'s Opp'n at 10 (emphasis added)   However, this supposed requirement for a "joint agreement" appears nowhere in Section 6.1(s)(1).   *See* E.O. 13,526, § 6.1(s)(1).

Next, Plaintiff asserts that the Bank of England Letter cannot be considered foreign government information because the Bank of England, an instrumentality of the United Kingdom, "is not the United Kingdom government," "[n]or an element of the United Kingdom government."

Pl.'s Opp'n at 15.   This assertion too lack any support in any authority.   That is, Plaintiff does not explain how a "wholly owned corporation" of the United Kingdom, a description it endorses (*see* Pl.'s Opp'n at 10), cannot constitute "an element thereof" of a "foreign government or governments," for purposes of making classified national security information determinations under E.O. 13,526.   Indeed, the authorities that Plaintiff cites in support of this contention—i.e., that a wholly government-owned instrumentality with independent legal status such as the Bank of England generally cannot be considered a part of a foreign government—all concern the issue of whether sovereign immunity blocks a civil suit against a particular entity.   *First Nat'l. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 618-19 (1983) (contract dispute – letter of credit); *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 845-46 (D.C. Cir. 2000) (contract dispute– lease agreement); *Hercaire Int'l, Inc. v. Argentina,* 821 F.2d 559, 561 (11th Cir. 1987) (contract dispute – procurement); *Hester Int'l Corp. v. Fed. Republic of Nigeria,* 879 F.2d 170, 171-72 (5th Cir. 1989) (contract dispute – project finance); *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 440-41 (D.C. Cir. 1990) (corporate governance).

Here, the Court is not called upon to consider whether the Foreign Sovereign Immunities Act or broader principles of international comity allow the Bank of England to be sued in a U.S. court.   Rather, it is called upon to answer the question whether it is logical and plausible for an original classifying authority in the Executive Branch to consider the letter to be a communication containing foreign government information within the meaning of E.O. 13,526, Section 1.4(b) when it is (1) from the Bank of England—which Plaintiff acknowledges as an entity completely owned by the United Kingdom, *see* Pl.'s Opp'n at 10; (2) identifies regulatory topics at issue between the United States and the United Kingdom; and (3) outlines possible steps that the United

Kingdom may take.  It is clear that the answer to this question is yes.  The letter is a communication between an entity wholly owned by the government of a foreign country that identifies regulatory topics at issue between the United States and the foreign government that owns the entity and outlines possible steps that the same foreign government could or will take.  As such, the Department's that the communication contains foreign government information is both logical and plausible and entitled to deference.

## III.    THE LETTER CONSTITUTES AN ECONOMIC MATTER RELATING TO NATIONAL SECURITY.

With respect to Plaintiff's claim that the Bank of England Letter does not constitute "scientific, technological, or economic matters relating to the national security," the Mason Declaration makes clear that the Bank of England Letter concerns "international regulatory standards," the "application of [international regulatory] standards," and "regulatory topics at issue between the United Kingdom and the United States", and that it describes "policy positions" and "possible next steps" for the United States and the United Kingdom.  Based on this description, Plaintiff concedes that the Bank of England Letter "may well relate to economic matters[.]"  Pl's Opp'n at 15.  Plaintiff takes issue, however, with the specificity of the Mason Declaration's evaluation that "the Bank of England Letter contained analysis and assessments of economic and financial conditions and policies of particular countries and the implications thereof, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security."  Mason Decl. ¶ 8.  Plaintiff asserts that the Mason Declaration does not provide sufficient detail to afford Plaintiff "a meaningful opportunity to contest" the soundness of that conclusion.  Pl.'s Opp'n at 16.  But providing any more detail as to the nature of the topics at issue and the policies and next steps under discussion would breach the confidentiality requested by the Bank of England and undermine the purpose of classifying the document in the first place.  As explained

above, there is every reason to give the Mason Declaration substantial weight and on that basis to conclude that it is both logical and plausible that the Bank of England Letter does deal with "economic matters relating to the national security" within the meaning of E.O. 13,526, Section 1.4(e).

## IV.     THE LETTER IS PART OF THE UNITED STATES' FOREIGN RELATIONS AND ACTIVITIES.

Finally, with respect to Plaintiff's claim that the Bank of England letter does not constitute "foreign relations or foreign activities of the United States, including confidential sources," Plaintiff provides no facts to challenge the statement in the Mason Declaration that the Bank of England letter met the criteria for classification set forth in E.O. 13,526, Section 1.4(d).  Mason Decl. ¶ 8.  Plaintiff states in a conclusory fashion that "[a]s the Bank of England is not the United Kingdom government, communication between the Bank of England and the United States is neither foreign government information *nor foreign relations* and not exempt under FOIA."  Pl.'s Opp'n at 15 (emphasis added); *see also id.* at 10 ("No reason is given why this letter concerns the foreign activities of the United States.  As Defendant incorrectly equates the Bank of England with the United Kingdom government, Defendant appears to be asserting, wrongly, that this letter constitutes foreign relations with the government of the United Kingdom").  Plaintiff fails to explain how a letter from "a senior official of the Bank of England," a wholly owned entity of the government of the United Kingdom, to the Secretary, which "included sensitive information regarding international regulatory standards and the application of those standards, identified certain regulatory topics at issue between the United Kingdom and the United States, laid out policy positions, and outlined possible next steps for the two countries to take" and that the sending agency has made clear was sent in confidence (see Mason Decl. ¶4), cannot constitute foreign relations or foreign activities of the United States, within the meaning of E.O. 13,526, Section

1.4(d).   In the absence of facts to support a challenge to the Department's classification

determination, the classification determination must stand.

## V.      THE MASON DECLARATION IS ENTITLED TO SUBSTANTIAL WEIGHT AND NO IN CAMERA REVIEW IS REQUIRED.

Plaintiff seeks to deny the Mason Declaration the substantial weight to which it is entitled,

by alleging "bad faith or a general sloppiness in the declassification or review process."  *See Afshar*

*v. Dep't of State*, 702 F.2d 1125, 1131 (D.C. Cir. 1983).  Plaintiff's primary example of "bad faith

or sloppiness" is the Department's action to classify the letter only after receiving a FOIA request

to which the letter was potentially responsive.  *See* Pl.'s Opp'n at 5, 7.  However, as stated in its

Opening Brief, the Department complied with the requirements of Section 1.7(d) of E.O. 13,526,

which permits proper authorities to classify or reclassify information that has not previously been

disclosed to the public after receiving a FOIA request, a Privacy Act request, or the mandatory

review provisions of E.O. 13,526 itself.  *See* E.O. 13,526, § 1.7(d), 75 Fed. Reg. 707, 711 (Jan. 5,

2010); *see, e.g.*, *Edmonds v. Dep't of Justice*, 405 F. Supp. 2d 23, 29 (D.D.C. 2005).

Plaintiff's other purported examples of "bad faith or sloppiness" are anything but and

include claims that the Department (1) denied another FOIA requester expedited processing of a

FOIA request for the same Bank of England Letter at issue in this matter, (2) took approximately

23 months to process another requester's FOIA request for the Bank of England Letter, (3)

characterized the Bank of England Letter, a communication from the Bank of England, as a

"foreign record controlled by the Bank of England," (4) classified the letter two years and seven

months after it was sent by the Bank of England, (5) made the classification determination "after

a flood of embarrassing press reports,"[1] and (6) failed to follow another agency's Foreign Affairs

---

[1]      This is Plaintiff's unsupported characterization of three news articles published in April 2015, two years prior to the April 2017 classification determination.

Manual in making the determination to classify this document.  *See* Pl.'s Opp'n at 4-8.  Finally, Plaintiff appears to allege, without support, that "bad faith or sloppiness" attaches to the Department based on the few weeks lapse between the Bank of England's initial letter and its subsequent explicit request for confidentiality.  Pl.'s Opp'n at 4.

Plaintiff cites no support, based in the relevant Executive Order or otherwise, for the proposition that confidentiality requests must be made contemporaneously with the information for which the confidentiality is sought.  Similarly baseless is Plaintiff's assertion that the Department is required to make an immediate classification determination upon receipt of a request for confidential handling of a non-public document or face revealing it to public.  The Department's classification of the document was consistent with Section 1.7(d) of E.O. 13,526 after receiving a FOIA request for previously non-public information, a complex FOIA request implicating sensitive information for which a senior Bank of England official requested confidentiality.  The fact that the Department classified the document after FOIA's 20 day constructive exhaustion period lapsed is no indication of "bad faith or sloppiness."

Additionally, although Plaintiff characterizes three April 2015 news articles as "embarrassing press reports,"[2] Plaintiff does not provide any facts to support its allegation that the Department was aware of these articles in April 2017, when it made its classification determination.  Finally, to the extent Plaintiff claims that the Department did not properly classify the letter because it failed to follow another agency's procedures (outlined in the Foreign Affairs

---

[2]      Plaintiff makes the further unsupported claim that "[t]he disagreement between Bank of England Governor Carney and Treasury Secretary Lew was an embarrassment."  Pl.'s Opp'n at 8.  Plaintiff fails to explain why a possible disagreement between these two individuals would constitute an embarrassment to either party.

Manual), Plaintiff fails to explain how this is relevant to the Department's exercise of its own classification authority and withholding in this matter.  The Department has the authority to develop and implement policies concerning information security with respect to its own operations, but these policies only apply to other departments with respect to those departments' official duty abroad or personnel assigned to diplomatic or consular posts.  *See* 22 U.S.C. § 4802(a)(1)(A), (c)(1).  Absent evidence of "bad faith or a general sloppiness in the declassification or review process," the Mason Declaration describes the classified letter with "reasonable specificity" and demonstrates the withheld letter logically falls within the exemption, that is, that it is properly classified in the interest of national security. *See* 5 U.S.C. § 552(b)(1).

"Summary judgment is warranted on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Wolf*, 473 F.3d at 374 (quoting *Miller Audit Project v. Casey*, 656 F.2d 724, 776 (D.C. Cir. 1981)).  For the reasons outlined above, the Mason Declaration contains ample evidence that the Bank of England Letter was properly classified, presenting a "logical or plausible" prediction that disclosure of the Bank of England Letter would cause harm to national security. *Judicial Watch*, 715 F.3d at 943 (internal quotation marks and citation omitted).  Plaintiff has not alleged facts sufficient to demonstrate Defendant's handling of the FOIA request at issue in this case was characterized by "bad faith or a general sloppiness."  The Mason Declaration should therefore be given the "substantial weight" to which "detailed agency explanations in the national security context" are entitled, *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).

Moreover, because the Mason Declaration amply supports the Department's withholding, there is no reason that this Court should undertake an in camera review of the Bank of England

Letter.  At bottom, it is clear on the written record that the Department's withholding of the Bank of England Letter was proper under FOIA Exemption 1, 5 U.S.C. § 552(b)(1).  As no material facts are at issue, the Department is entitled to summary judgment in this case.

## **CONCLUSION**

For the foregoing reasons, Defendant's summary judgment motion should be granted.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:_____/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2518