# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-1600 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| DEPARTMENT OF TREASURY, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Competitive Enterprise Institute ("Competitive Enterprise") brings this action against the Department of Treasury pursuant to the Freedom of Information Act ("FOIA") concerning its request for a two-page letter (the "Letter") exchanged between the Governor of the Bank of England and former Treasury Secretary Jack Lew. Neither party contests that the Letter contains potentially sensitive information regarding the economic policies of the United States government. They do dispute, however, whether FOIA requires the disclosure of that information.

The Department of Treasury declined to disclose the Letter under FOIA Exemption 1, which exempts from disclosure information classified in the interest of national defense or foreign policy. Competitive Enterprise argues that the Letter does not fall within the scope of Exemption 1 because it was improperly classified. It also requests that the Court conduct an *in camera* review of the Letter, asserting that the declaration provided by the Department of Treasury is not specific enough for the Court to reach a determination on the Letter's status, and

that the Department's handling of the classification process and FOIA requests indicate agency bad faith or sloppiness.

For the reasons explained below, the Court finds that the Letter was properly classified and that the Department of Treasury's Exemption 1 withholding is justified. Accordingly, the Court grants the Department of Treasury's motion for summary judgment.

## II. FACTUAL BACKGROUND

In September 2014, the Governor of the Bank of England, Mark Carney, sent the Letter to then-Secretary of the Treasury Jack Lew. Def.'s Statement of Material Facts ("Def.'s Statement") ¶ 1, ECF No. 12. To date, the contents of the Letter have not been made public or disclosed by the Department of Treasury, but Competitive Enterprise contends that the Letter inquired why the reinsurance subsidiary of a large and influential American company, Berkshire Hathaway, was not included in the United States Financial Stability Board's list of "systemically important financial institutions." *Id.* ¶ 4; *see* Compl. ¶ 1, ECF No. 1. After the Letter was sent, the Bank of England requested that the Letter be given confidential treatment. Def.'s Statement ¶ 2.

In April 2015, a series of online reports were published regarding Berkshire Hathaway's alleged absence from the Financial Stability Board's list. *See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 7, ECF No. 14; Pl.'s Opp'n. Attach. A. ECF No. 14-4. Later that month, Elizabeth Festa, who is not a party to this action, submitted a FOIA request for the Letter. *See id.* Attach. B., ECF No. 14-5. The Department of Treasury denied Ms. Festa's request, claiming that the Letter was a "foreign record" not releasable by the agency. *Id.* Attach. C., ECF No. 14-6. Two years later, in April 2017, the Department of Treasury decided to classify the Letter pursuant to § 1.4(b), (d), and (e) of Executive Order 13,526, on the grounds that the Letter

contained "foreign government information," information damaging to the "foreign relations or foreign activities of the United States," and information concerning "scientific, technological, or economic matters relating to the national security." Def.'s Statement ¶¶ 5–8; Decl. Michael Mason ("Mason Decl.") ¶ 8, ECF No. 12-1.

That month, Competitive Enterprise submitted its own FOIA request for the Letter. Pl.'s Opp'n at 1. The Department of Treasury informed Competitive Enterprise that the requested Letter had been properly classified "in accordance with Executive Order 13,526," and it accordingly denied the request under FOIA Exemption 1, which protects against the disclosure of classified information. *Id.* Attach. F., ECF No. 14-9; Def.'s Statement ¶ 5; *see* 5 U.S.C. § 552(b)(1). In June 2017, the Department of Treasury similarly informed Ms. Festa of the Letter's classification, noting that though the Letter was not a "foreign record," as it had previously been characterized, it nonetheless remained protected from disclosure. Pl.'s Opp'n. Attach. E. ECF No. 14-8.

In August 2017, Competitive Enterprise filed this action seeking to compel the Letter's disclosure. It argues primarily that the Letter was improperly classified, and thus cannot be withheld under FOIA Exemption 1. *See generally* Compl. The Department of Treasury's motion for summary judgment is now ripe and pending before the Court.

### III. LEGAL STANDARDS

#### A. Freedom of Information Act

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *U.S. Dep't*

*of Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA mandates the release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions. *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)).

### B. Summary Judgment

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). The Court may grant summary judgment based solely on an agency's declarations when the declarations "demonstrate that the information withheld logically falls within the claimed exemption and are not controverted by other evidence in the record or by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). Such declarations are afforded a presumption of good faith. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Elec. Privacy Info. Ctr. v. DEA*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). This Court reviews the agency's

explanations *de novo*, and will endorse an agency's decision to withhold information if the justification for invoking a FOIA exemption "appears 'logical' or plausible.'" *Pinson v. DOJ*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). Nonetheless, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable." *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted). Finally, in conducting its review, a court may rely on its own *in camera* examination of disputed documents to determine whether they were properly withheld under the claimed statutory exemptions. *See* 5 U.S.C. § 552(a); *see also Citizens for Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin.*, 715 F. Supp. 2d 134, 140–42 (D.D.C. 2010) (relying on the Court's *in camera* review to resolve whether documents had been properly withheld).

## IV. ANALYSIS

The Department of Treasury maintains that the Letter may be withheld under Exemption 1 because the information in the Letter was properly classified in accordance with the procedural and substantive requirements of Executive Order No. 13,526, and the information in the letter pertains to (1) foreign government information; (2) foreign relations or foreign activities of the United States; and (3) scientific, technological, or economic matters relating to the national security. *See* Exec. Order No. 13,526, 75 Fed. Reg. 707 ("EO 13,526") §§ 1.1, 1.4(b), (d), (e) (Dec. 29, 2009); Def.'s Mot. Summ. J. ("Def.'s Mot.") at 6, ECF No. 12.

Competitive Enterprise attacks the Letter's classification on several grounds. First, Competitive Enterprise asserts that the Department of Treasury improperly classified the Letter to avoid the embarrassment of public disclosure. Pl.'s Opp'n at 5–6. Second, Competitive Enterprise argues that the Letter does not fall within the categories of information that may be

5

classified under EO 13,526 § 1.4. Pl.'s Opp'n at 2–3. Third, Competitive Enterprise argues that even if the Letter's content warranted classification, the Department of Treasury failed to follow the classification procedure established by the Department of State's Foreign Affairs Manual. Pl.'s Opp'n at 5–7.

For the reasons explained below, the Court holds that because it is plausible that the Letter contains information, the disclosure of which could harm "foreign relations," it was properly classified pursuant to EO 13,526 § 1.4(d). The Court additionally concludes that given the deference afforded to agencies in matters of national security, *see Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998), the specificity of the Mason Declaration, and the lack of evidence of bad faith on the part of the Department of Treasury, the Letter has properly been withheld under FOIA Exemption 1 and *in camera* review is not warranted.

### A. The Bank of England Letter Was Properly Classified

The Court first considers whether the Department of Treasury acted in accordance with the classification guidelines of EO 13,526 and whether, therefore, the Letter was properly withheld under Exemption 1. Competitive Enterprise makes several arguments for why the Letter's classification does not comply with EO 13,526, none of which persuade the Court. The Department of Treasury's declaration adequately indicates that the Letter "pertains to . . . foreign relations or foreign activities of the United States," and therefore was properly classified. *See* EO 13,526 § 1.4(d).

As noted above, FOIA requires agencies to disclose records upon request unless one of nine exemptions applies. *See Milner*, 562 U.S. at 565. Exemption 1, which the Department of Treasury invokes in this case, permits agencies to withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of

6

national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Given the "unique insights" agencies have into what adverse effects the disclosure of sensitive material may have, *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983), agency declarations asserting Exemption 1 classification are accorded substantial weight. *Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993).  When determining whether information was properly withheld under Exemption 1, the "only question [for the Court] is whether the disputed document is properly classified under the applicable Executive Order"—in this case Executive Order 13,526. *Ctr. for Int'l Envtl. Law v. Office of Trade Representative*, 718 F.3d 899, 902–04 (D.C. Cir. 2013).

Executive Order No. 13,526 sets forth both procedural and substantive criteria for classification, stating in relevant part that information may be classified under the Order only if: (1) an original classification authority classifies the information; (2) the information is under the control of the United States Government; (3) the information falls under one or more of the categories of information listed in § 1.4 of the order; and (4) the classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security,[1] and the authority is able to identify or describe the damage.  EO 13,526 § 1.1.  Competitive Enterprise does not dispute that the Department of Treasury satisfied § 1.1(a)(1) and (2), so in analyzing whether the Letter was properly classified, the Court will focus only on whether it is "plausible" that the Letter falls within one of the categories enumerated in § 1.4.  *See* Pl.'s Opp'n at 9; *see also ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

---

[1] "Damage to the national security" includes any harm to the foreign relations of the United States. EO 13,526 § 6.1(1).

Pursuant to § 1.4, information shall not be considered for classification unless "its unauthorized disclosure could reasonably be expected to cause . . . damage to the national security" and it pertains to one of eight particular categories:

> (a) military plans, weapons systems, or operations;
> (b) foreign government information;
> (c) intelligence activities, sources, or methods;
> (d) foreign relations or foreign activities of the United States;
> (e) scientific, technological, or economic matters relating to the national security;
> (f) government programs for safeguarding nuclear materials;
> (g) vulnerabilities or capabilities of systems . . . relating to the national security; or
> (h) the development, production, or use of weapons of mass destruction.

EO 13,526 § 1.4(a)–(h). Furthermore, information falling within these guidelines is not properly classified if the classification process was undertaken to prevent embarrassment to a person, organization, or agency. *Id.* § 1.7.

First, Competitive Enterprise makes the conclusory assertion that the Department of Treasury classified the Letter to avoid embarrassment, but mere speculation that an agency withheld or classified information to avoid embarrassment is not sufficient to pull that information outside the scope of EO 13,526. *Dibacco v. U.S. Dep't of Army*, 234 F. Supp. 3d 255, 276 (D.D.C. 2017); *accord Assoc. Press v. FBI*, 265 F. Supp. 3d 82, 96 (D.D.C. 2017). Competitive Enterprise cites nothing in the record indicating that the Department of Treasury considered the information in the Letter an embarrassment, or that it was aware of any news reports regarding the Letter's existence prior to classification. *See* Pl.'s Opp'n at 7–8; Def.'s Reply Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Def.'s Reply") at 9, ECF No. 15. Moreover, as the Department of Treasury notes in its reply brief, the Department did not classify the Letter until *two years* after the allegedly embarrassing news reports were released. Def.'s Reply at 8 n.1. Either the Department's capacity for delayed embarrassment is unrivaled, or the classification decision was only remotely related to those stories.

8

Second, Competitive Enterprise claims that the Letter does not fall within one of the § 1.4 categories—and therefore that its classification was improper—because (1) the Bank of England is not a "foreign government," and (2) the agency's declaration fails to establish that the information in the Letter is "scientific, technological, or economic matters *relating to the national security*," as required by § 1.4(e). However, Competitive Enterprise offers little meaningful challenge to the Department of Treasury's assertion that the information contained in the Letter also falls squarely within § 1.4(d), pertaining to "foreign relations" or activities of the United States. Because this assertion has merit, the Court need not consider whether the Letter was also properly classified under §§ 1.4(b) or (e). *See Leopold v. CIA*, 106 F. Supp. 3d 51, 62 (D.D.C. 2015) (holding that a document need only satisfy "one category" to meet § 1.4's classification requirement).

EO 13,526 does not specifically define "foreign relations," as it is used in § 1.4(d), and courts have applied this category to a range of situations in which it is reasonable to believe that the disclosure of information may harm relations between the United States and a foreign country—whether or not that information is from or pertains to the foreign government itself. *See Ctr. for Int'l Envtl. Law*, 718 F.3d at 902–04 (holding that the release of past NAFTA negotiation documents may affect foreign relations by harming United States relations with foreign investors); *Judicial Watch, Inc. v. DOJ*, 306 F. Supp. 2d 58, 65–66 (D.D.C. 2004) (concluding that disclosure of corporate officials' confidential comments on the World Bank's role in a financial dispute could harm foreign relations); *Am. Jewish Cong. v. U.S. Dep't of Treasury*, 549 F. Supp. 1270, 1277 (D.D.C. 1982) (implying that information relating to investments involving "foreigners" bears on foreign relations); *see also Intellectual Prop. Watch v. U.S. Trade Representative*, 205 F. Supp. 3d 334, 353–57 (S.D.N.Y. 2016) (characterizing

9

future trade negotiations between the United States and foreign countries as relating to foreign relations).

Competitive Enterprise's conclusion, therefore, that the exempted information need originate from, or be communicated to, a foreign government to fall under the "foreign relations" category, *see* Pl.'s Opp'n at 14–15, is not supported by case law. *See Am. Jewish Cong.*, 549 F. Supp. at 1277 (rejecting plaintiff's "contention that the government may solely classify documents under 'foreign relations' category if such documents are in fact furnished by a foreign government"), *aff'd*, 713 F.2d 864 (D.C. Cir. 1983). The ultimate question before the Court is "not whether the court agrees in full with the [agency's] evaluation of the expected harm to foreign relations," but rather "whether the agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility." *Ctr. for Int'l Envtl. Law*, 718 F.3d at 903 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). The Court concludes that the Department of Treasury has met this standard here.

The Department of Treasury's description of the Letter is sufficient to conclude that the Letter's disclosure could damage the United States' foreign relations. The Mason Declaration asserts that the Letter contains "sensitive" information regarding international regulatory standards, policy positions of the United States and the United Kingdom, potential next steps both countries may take regarding application of those standards, and other regulatory topics "at issue." Mason Decl. ¶ 4. Courts have held that the disclosure of information that may impact future negotiations between the United States and foreign nations, or that may damage the United States' ability to speak candidly with or about foreign nations, poses sufficient potential harm to "foreign relations" to justify classification under EO 13,526 and nondisclosure under Exemption 1. *See, e.g.*, *Judicial Watch*, 306 F. Supp. 2d at 65–66. Furthermore, the potential

harm to foreign relations posed by the disclosure of United States policy positions contained in the Letter is akin to the potential harm of releasing past bargaining positions in NAFTA negotiations, *see Ctr. for Int'l Envtl. Law*, 718 F.3d at 902–03, or releasing the United States Trade Representative's "candid assessments" of other countries' proposals during negotiations surrounding the Trans-Pacific Partnership agreement. *See Intellectual Prop. Watch*, 205 F. Supp. 3d at 353–57. The Court concludes that the letter was properly classified. [2]

As noted, proper classification is the only factor courts need consider when evaluating whether information has been properly withheld under Exemption 1. *See Ctr. for Int'l Envtl. Law*, 718 F.3d at 902–04. Therefore, given the deference accorded to agency declarations in FOIA cases, *see Krikorian,* 984 F.2d at 464, and the plausibility of the Department of Treasury's contention that the Letter's release "reasonably could be expected" to harm United States foreign relations, the Court finds that the Letter was properly classified under EO 13,526 § 1.4(d) and thus properly withheld under Exemption 1. Mason Decl. ¶ 8.

### B. *In Camera* Review of the Bank of England Letter Is Not Warranted

In addition to contesting the Department of Treasury's classification decision, Competitive Enterprise argues that the lack of specificity in the Department of Treasury's declaration and the alleged bad faith in the Department's classification and FOIA response

---

[2] Competitive Enterprise also argues that the Letter was not properly classified because the Department of Treasury failed to adhere to the Department of State's Foreign Affairs Manual, which requires the Department of State's input on the classification of "information received from a foreign government." Pl.'s Opp'n 5–6; *see* 12 FAM 534.1(d)(1)–(4). That argument lacks merit for two reasons. First, because the Letter falls within § 1.4(d) of EO 13,526, pertaining to "foreign relations," it does not and need not necessarily contain "information received from a foreign government," and therefore the Manual need not apply. Second, even if the Letter does contain "foreign government information," the Foreign Affairs Manual applies solely to the classification procedures of "foreign affairs agencies," which the Department of Treasury is not. *See* 12 FAM 511.1(a)(1)–(5) (listing "foreign affairs agencies").

processes necessitate *in camera* review by this Court. While the Court may further examine the agency's records at its discretion under 5 U.S.C § 552(a)(4)(B), *in camera* review is a last resort in national security situations, *Larson*, 565 F.3d at 870, and is only warranted if the agency's declarations are insufficient to place the requested document within the exemption claimed, and if there is evidence of bad faith. *ACLU*, 628 F.2d at 626. For the reasons below, the Court holds that the language of the Department of Treasury's declaration is specific enough to place the Letter within the exemption claimed, and that Competitive Enterprise's allegations of bad faith are unfounded. Accordingly, the request for *in camera* review is denied.

As noted, the Court may rely on agency declarations when the declarations "demonstrate that the information withheld logically falls within the claimed exemption and [is] not controverted by evidence of agency bad faith." *Larson*, 565 F.3d at 862. Courts are generally reluctant to intrude on agency authority regarding military or national security affairs. *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988). Therefore, in the context of national security exemptions such as Exemption 1, agency declarations are afforded "substantial weight," *see Krikorian,* 984 F.2d at 464, so long as they are sufficiently detailed to permit meaningful *de novo* review. *Voinche v. FBI*, 412 F. Supp. 2d 60, 65 (D.D.C. 2006); *see Campbell*, 164 F.3d at 32 (noting that declarations must establish a "nexus" between the protected material and the exemption claimed). Accordingly, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping" will not satisfy this burden. *Larson*, 565 F.3d at 862 (citing *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

When it comes to an agency's articulation of national security threats, courts recognize that agency declarations will always be somewhat speculative and need not show actual harm. *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980). While wholly conclusory declarations do

not allow courts to properly review the information withheld under an exemption, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley*, 508 F.2d at 1124; *see, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.* (noting that "pertains," as used in EO 13,526 § 1.4, "is not a very demanding verb") (quoting *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 857 F. Supp. 2d 44, 60 (D.D.C. 2012)). Furthermore, agencies are not faulted for "using the language of the order" to explain their reasoning, *Leopold*, 106 F. Supp. 3d at 62, as long as the language links to the rationale for withholding the documents at issue. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *Landmark Legal Fund v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) (determining that an agency's "parrot[ing]" of statutory language in an affidavit was non-dispositive in the court's specificity determination).

Again, the Court's task is not to evaluate the objective validity of the Department of Treasury's assertions, but rather to evaluate whether the Mason Declaration is specific enough to determine whether the agency plausibly asserted that the Letter's disclosure could "reasonably could be expected" to harm the foreign relations of the United States. *Ctr. for Int'l Envtl. Law*, 718 F.3d at 903 (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). In light of these principles, Competitive Enterprise's contention that the Mason Declaration does not specifically or adequately connect the Letter's disclosure to national security harm is unfounded.

The Mason Declaration identifies several discrete topics that this Court has already determined reasonably fall under the category of information that may damage "foreign relations"— which the language of EO 13,526 equates with damage to national security. EO 13,526 § 6.1(1); *see* EO 13,526 § 1.4(d); Mason Decl. ¶ 4 (characterizing Letter as discussing "international regulatory standards and the application of those standards . . . regulatory topics at

13

issue. . . [,] policy positions, and . . . possible next steps for the two countries"). It is, therefore, plausible that the Department of Treasury also concluded that disclosure of that information would result in damage to the relations between the United States and the United Kingdom. Mason Decl. ¶ 4. Moreover, the Bank of England specifically requested that the Letter be kept confidential, a request that both indicates the sensitivity of the information contained in the Letter and supports the Department of Treasury's contention that its disclosure could reasonably be expected to damage foreign relations. Def.'s Statement ¶ 2. Any more specificity from the Department of Treasury, particularly with a document of this length, would seemingly "thwart" Exemption 1's original purpose, which this Court is loath to do. *See King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987). [3]

Finally, the Court does not agree that Competitive Enterprise's primary allegations of bad faith on the Department of Treasury's part—that the agency unnecessarily delayed its response to the FOIA requests and classified the Letter to avoid embarrassment—warrant *in camera* review. Evidence of bad faith must be "tangible" in order to justify *in camera* review. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). Absent tangible evidence of bad faith, "court[s] should not question the veracity of agency submissions." *Id.* Competitive Enterprise's allegations regarding the Department of Treasury's "suspicious" handling of the Letter simply detail a delayed (albeit heavily) response, which courts in this jurisdiction have

---

[3] Competitive Enterprise additionally argues that Mr. Mason's use of statutory language in his declaration necessitates *in camera* review. *See* Pl.'s Opp'n at 16 (citing *Campbell*, 164 F.3d at 30). However, as noted, the agency is "permitted to use the language of the order to explain its reasoning." *Leopold*, 106 F. Supp. 3d at 62. Given the Court's determination that the language of the declaration is sufficiently specific, Mr. Mason's use of certain "verbatim" passages from EO 13,526 is not, as Competitive Enterprise contends, dispositive. Pl.'s Opp'n at 16 n.5 (citing Mason Decl. ¶ 7–9).

repeatedly found to be insufficient evidence of agency bad faith. [4] *Ellis v. DOJ*, 110 F. Supp. 3d 99, 107 (D.D.C. 2015); *see Bartko v. DOJ*, 102 F. Supp. 3d 342, 351–52 (D.D.C. 2015) (collecting cases). And, as discussed above, Competitive Enterprise has offered little evidence other than its own speculation that the information in the Letter was, or would have been, an embarrassment to the Department of Treasury. *See* Pl.'s Opp'n at 7–8; Def.'s Reply at 9. Absent tangible evidence of agency wrongdoing, the Court finds that the Department of Treasury's actions do not demonstrate the bad faith or egregious "sloppiness" that Competitive Enterprise claims. Pl.'s Opp'n at 18–19 (citing *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1131 (D.C. Cir. 1983)).

Having determined that the Mason Declaration is sufficiently detailed and that the record contains no evidence of bad faith, "*in camera* review is neither necessary nor appropriate"— particularly given the national security implications of Exemption 1. *ACLU*, 628 F.3d at 626 (citing *Hayden*, 608 F.2d at 1387); *see Larson*, 565 F.3d at 870. Accordingly, Competitive Enterprise's request for *in camera* review of the Letter is denied. [5]

---

[4] Competitive Enterprise rests this bad faith argument on the Department of Treasury's response to Ms. Festa, who is not a party to this case. *See* Pl.'s Opp'n at 4–5. While the Court takes notice of the timeline surrounding Ms. Festa's request, the fact that the agency later determined that the information in the Letter was classifiable, and not a "foreign record," is not tangible evidence of bad faith, nor does it display the extreme sloppiness Competitive Enterprise claims—particularly given the Court's determination that the information in the Letter was indeed classifiable. *See* Attach. E. While the classification of material after a FOIA request may be problematic in certain cases, the Department of Treasury complied fully with EO 13,526 procedures. *See* EO 13,526 § 1.7(d) (describing the procedure for post-FOIA request classification); Mason Decl. ¶ 6–10.

[5] Though Competitive Enterprise does little to raise the issue of segregability, the Court has "an affirmative duty to consider the segregability issue *sua sponte*." *Morley*, 508 F.3d at 1123 (citing *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C.Cir.1999)). The Department of Treasury determined that there was "no non-classified portion of the document to segregate," and it therefore classified the Letter in its entirety. Def.'s

## V.  CONCLUSION

For the foregoing reasons, the Department of Treasury's motion for summary judgment (ECF No. 12) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 9, 2018                                                                                          RUDOLPH CONTRERAS
                                                                                                                         United States District Judge

---

Mot. at 6; *see* Mason Decl. ¶ 8–9.  Courts generally respect an agency's determination that withheld records are exempt in their entireties, particularly when the information "implicates national security concerns," and the Court will do so here as well.  *Makky v. Chertoff*, 489 F. Supp. 2d 421, 441 n.23 (D.N.J. 2007).  Moreover, considering that the Letter is only two pages long, even if it were not classified in its entirety, any segregable information that may have remained after the redaction of the exempted portions would likely be so "inextricably intertwined" with classified information as to render any segregability futile.  *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 131 (D.D.C. 2009); *see ACLU v. CIA*, 892 F. Supp. 2d 234, 250 (D.D.C. 2012) (applying the presumption of good faith to an agency's segregability determinations).  Therefore, the Department of Treasury has satisfied its segregability burden.